UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PEDRO RODRIGUEZ,

                                    Plaintiff,                          **OPINION & ORDER**

            - against -                                                    No. 19-CV-3694 (CS)

B. FURCO,

                                    Defendant.
-------------------------------------------------------------x

Appearances:

Pedro Rodriguez
Marcy, New York
*Pro Se Plaintiff*

Kathryn Martin
Assistant Attorney General
Office of the Attorney General of the State of New York
White Plains, New York
*Counsel for Defendant*

Seibel, J.

        Before the Court is Defendant's unopposed motion for summary judgment.  (ECF

No. 53.)  For the following reasons, the motion is GRANTED.

## I.    **BACKGROUND**

        The following facts are based on Defendant's Local Civil Rule 56.1 Statement and

supporting materials, and are undisputed unless otherwise noted.[1]

---

[1] Plaintiff did not file a responsive 56.1 Statement.  Local Civil Rule 56.1 requires that
the party opposing a motion for summary judgment submit a counterstatement responding to the
moving party's statement of material facts, indicating which facts are admitted and which the
opposing party contends are in dispute and require a trial.  Local Rule 56.1(b).  Under the Local
Rule, "[i]f the opposing party then fails to controvert a fact so set forth in the moving party's
Rule 56.1 statement, that fact will be deemed admitted."  *Giannullo v. City of N.Y.*, 322 F.3d 139,

A.    <u>Facts</u>

Plaintiff is incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  (ECF No. 57 ("D's 56.1 Stmt.") ¶ 1.)  During the events relevant to this lawsuit, Plaintiff was held at Green Haven Correctional Facility in Stormville, New York.  (*Id.* ¶ 5.)  Defendant Barbara Furco is employed by DOCCS as a Nurse Administrator; she works primarily at Fishkill Correctional Facility but occasionally also works at Green Haven.  (*Id.* ¶¶ 2-3.)

On or around February 1, 2017, Plaintiff began feeling ill.  (*Id.* ¶ 17.)  He was vomiting, lightheaded, and dizzy, and had been experiencing numbness in his feet.  (*Id.* ¶ 19.)  He requested medical attention and saw a nurse (not the Defendant) in the prison's medical unit during regular sick call.[2]  (*Id.* ¶ 18.)  The nurse checked his "vital signs, temperature, blood pressure and respiration, all of which were normal."  (*Id.*)  She directed Plaintiff to follow up with his primary care doctor if the symptoms persisted.  (*Id.* ¶ 20.)

Plaintiff next requested medical attention on February 12, 2017, at emergency sick call outside of regular sick call hours, when he again felt light-headed and fatigued, and had been vomiting (although he had not vomited that day).  (*Id.* ¶¶ 22-23, 28.)  He was seen on this

---

140 (2d Cir. 2003) (citing Local Rule 56.1(c)).  *Pro se* litigants are not excused from this requirement.  *SEC v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340, 344 n.4 (S.D.N.Y. 2011).  As Defendant served Plaintiff with the requisite notice pursuant to Local Civil Rule 56.2, (*see* ECF No. 58), I consider any properly supported facts in Defendant's 56.1 Statement admitted.

[2] DOCCS makes medical attention available to inmates at all times.  (D's 56.1 Stmt. ¶ 7.)  The medical unit is available for regular sick call several days a week at set times.  (*Id.* ¶ 9.)  In addition, inmates can request immediate medical attention outside of regular sick call times and be seen in the medical unit for emergency sick call.  (*Id.* ¶ 8.)  DOCCS procedures direct nurses who see inmates during sick call to make a record of the patient's health complaint or concern, take the patient's vital signs, and recommend treatment based on their assessment.  (*Id.* ¶¶ 10-13.)  Treatment may include a referral to the patient's primary care doctor.  (*Id.* ¶ 13.)

occasion by Defendant Furco. (*Id.* ¶ 26.) He reported his symptoms, including abdominal pain and intermittent nausea, which had been ongoing for more than four days. (*Id.* ¶ 27.) Defendant Furco checked Plaintiff's vital signs, all of which were normal. (*Id.* ¶ 29.) She also observed that he was alert and oriented, (*id.*), and she palpated his abdomen and did not find any obstruction, (*id.* ¶ 30). She advised Plaintiff to follow up at regular sick call if his symptoms persisted. (*Id.* ¶ 32.) She noted in Plaintiff's medical record that there was a pending request for him to see his primary care doctor. (*Id.* ¶ 34.)

On February 16, 2017, Plaintiff saw another nurse (not the Defendant) during regular sick call, and again complained of nausea and decreased appetite. (*Id.* ¶¶ 37-38.) He pressed to see a doctor, (P's Depo. at 53:14-22), and the nurse scheduled an appointment for him to see his primary care physician, (D's 56.1 Stmt. ¶ 39).

On February 18, 2017, Plaintiff was still not feeling well and was seen by Defendant Furco for the second time at emergency sick call. (*Id.* ¶¶ 40-41, 43.) At his deposition, Plaintiff stated that by then he was "losing weight." (ECF No. 56-1 ("P's Depo.") at 58:18-21.) He reported to Defendant that he had chronic intermittent nausea and had not been eating. (D's 56.1 Stmt. ¶ 43.) At his deposition, Plaintiff stated that at this visit Defendant was upset that he was in the medical unit again and threatened to make a "misbehavior report" if Plaintiff came back. (P's Depo. at 57:9-58:14.) Defendant asserts that she never threatened Plaintiff with discipline for seeking medical treatment. (ECF No. 55 ¶ 20.)

According to Defendant, at the February 18, 2017 visit Plaintiff refused to have his vitals taken, which is indicated on his chart. (D's 56.1 Stmt. ¶¶ 43-44.) Defendant observed that "Plaintiff's mucosa was moist, his skin was warm and dry, and there were no signs or symptoms of distress." (*Id.* ¶ 43.) She also had Plaintiff sit in the "bull pen" for observation for about

thirty minutes, during which time she states that he did not exhibit any visible signs of nausea or vomiting.  (*Id.* ¶ 45.)  At that point, Plaintiff was already scheduled to have a follow-up appointment with his primary care doctor on February 23, 2017.  (*Id.* ¶ 46.)[3]

On February 23, 2017, Plaintiff saw his primary care doctor.  (*Id.* ¶ 50.)  Plaintiff asserts that when his doctor saw him, he immediately got on the phone and started the process to have Plaintiff transferred to an outside hospital.  (P's Depo. at 63:11-21.)  Prison officials took Plaintiff to Putnam Hospital, where he was admitted, "diagnosed with anemia, and given two blood transfusions and B12 shots."  (D's 56.1 Stmt. ¶ 51.)  He remained in the hospital for four days before returning to Green Haven.  (P's Depo. at 76:11-20.)

In March 2017, Plaintiff filed a grievance related to Green Haven's failure to notify his family that he had been taken to Putnam Hospital.  (D's 56.1 Stmt. ¶ 56; ECF No. 56-4.)  He filed no grievance related to Defendant's treatment on February 12, 2017 or February 18, 2017.  (*Id.* ¶ 55.)  Both before and after the events relevant to this lawsuit, Plaintiff filed grievances regarding unrelated matters, including grievances related to medical treatment in a different facility.  (ECF No. 56-4; D's 56.1 Stmt. ¶ 54.)  He stated in his deposition that he is familiar with the DOCCS grievance process.  (P's Depo. at 77:13-15; D's 56.1 Stmt. ¶ 53.)

## B.    Procedural History

Plaintiff filed this lawsuit on April 25, 2019 against DOCCS officials Jaifa Collado and Leslie Carey, as well as two unnamed "Doe" defendants.  (ECF No. 2.)  On February 12, 2020, Plaintiff amended his complaint, removing Collado and Carey as defendants and naming Defendant Furco.  (ECF No. 28 ("AC"); *see* ECF No. 34; Minute Entry dated Oct. 28, 2020.)

---

[3] Plaintiff stated at his deposition that it is "possible" that Defendant told him he was seeing his primary doctor soon, but he did not recall that.  (P's Depo. at 60:13-61:8.)

Plaintiff's Amended Complaint advances claims against Defendant Furco under 42 U.S.C. §
1983 for violations of his Eighth Amendment rights in connection with the medical care he
received from Defendant in February 2017.  (*See* AC.)

Defendant sought and received an extension until April 24, 2020 to answer the Amended
Complaint, (ECF No. 31), but failed to answer until October 27, 2020, (ECF No. 36).  On
October 28, 2020, the Court held a status conference at which Defendant's then-counsel
explained that the delay was inadvertent and the result of an oversight by her office.  (*See* ECF
No. 44.)  Plaintiff moved for a default judgment on November 23, 2020.  (ECF No. 46.)  On
November 24, 2020, the Court denied Plaintiff's motion, finding that – particularly in light of the
preference for resolving disputes on the merits – the harsh remedy of default was not warranted
where the default was not willful and there was no significant prejudice to Plaintiff.  (ECF No.
48.)

On May 27, 2021, following the conclusion of discovery, (*see* ECF No. 37), Defendant
filed the instant motion for summary judgment, (ECF No. 53).  Defendant served Plaintiff with
her motion and all related documents, including the notice required under Local Rule 56.2.  (ECF
Nos. 58, 59.)  Plaintiff's opposition was due by July 14, 2021.  (*See* Minute Entry dated March
15, 2021.)  By letter dated July 8, 2021, Plaintiff sought dismissal of this action without
prejudice, stating that he had been informed by staff in the law library at Mid-State Correctional
Facility (where he was then and still is housed) that the case should have been filed in the New
York State Court of Claims.  (ECF No. 60.)  Defendant responded by letter on July 20, 2021,
opposing Plaintiff's request on the grounds that dismissal without prejudice was inappropriate at
such a late stage of the case; that re-litigation in another court would impose unnecessary and
duplicative costs and delay; and that granting the application would inappropriately allow

Plaintiff to avoid an adverse decision on the merits.  (ECF No. 62.)  The Court agreed with

Defendant and denied Plaintiff's application for dismissal without prejudice.  (ECF No. 63.)  The

Court advised Plaintiff that he could either consent to dismissal with prejudice or oppose the

pending motion for summary judgment by August 20, 2021, and that if he failed to do either, the

Court would consider the motion fully submitted and decide the matter without the benefit of

Plaintiff's position.  (*Id.*)  Plaintiff has not, to date, responded.

II.    **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be

counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of

material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence

sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d

Cir. 2008).  "The mere existence of a scintilla of evidence in support of the [non-movant's]

position will be insufficient; there must be evidence on which the jury could reasonably find for

the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than

simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory

allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (cleaned up).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1).  Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

*Pro se* litigants must be afforded "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014).  Where, as here, the non-moving party fails to respond to the movant's summary judgment motion, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (cleaned up).  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then

summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.*

(cleaned up) (emphasis omitted).

## III.   DISCUSSION

The Prison Litigation Reform Act ("PLRA") requires exhaustion of available

administrative remedies before incarcerated plaintiffs may bring their federal claims about prison

conditions to court.  42 U.S.C. 1997e(a).  Exhaustion is required for "all inmate suits about

prison life, whether they involve general circumstances or particular episodes."  *Porter v. Nussle*,

534 U.S. 516, 532 (2002).  New York provides the following procedures for incarcerated

individuals:

> The [Inmate Grievance Program ("IGP")] has a regular three-tiered process for
> adjudicating inmate complaints:  (1) the prisoner files a grievance with the Inmate
> Grievance Resolution Committee ("IGRC"), (2) the prisoner may appeal an
> adverse decision by the IGRC to the superintendent of the facility, and (3) the
> prisoner then may appeal an adverse decision by the superintendent to the Central
> Officer Review Committee ("CORC").  The IGP also has an "expedited" process
> for harassment grievances, which pertains to employee conduct meant to annoy,
> intimidate, or harm an inmate.  A harassment grievance is sent directly to the
> superintendent.  If the grievance is a bona fide harassment issue, the
> superintendent must initiate or request an investigation, and render a decision,
> after which the prisoner could then appeal to the CORC.

*Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir. 2009) (cleaned up); *see* 7 N.Y.C.R.R. §§ 701.5,

701.8.

The PLRA requires plaintiffs to exhaust only "available" administrative remedies.

42 U.S.C. § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016).  That is, a plaintiff "is

required to exhaust those, but only those, grievance procedures that are capable of use to obtain

some relief for the action complained of."  *Ross*, 136 S. Ct. at 1859 (cleaned up).  Under certain

circumstances an administrative procedure that is on the books may be considered "unavailable"

for PLRA purposes, such as where (1) the procedure "operates as a simple dead end – with

officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the

procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) access to the procedure is "thwart[ed]" by prison officials "through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60.

Here, the record is clear that Plaintiff never filed a grievance based on the allegedly inadequate medical care he received from Defendant. (*See* P's Depo. at 81:11-83:5; D's 56.1 Stmt. ¶ 55.) In March 2017 Plaintiff filed a grievance regarding Green Haven's failure to provide information about his hospitalization to his family, but that grievance did not raise the medical treatment he received from Defendant on the two occasions she treated him. (*See* P's Depo. at 81:6-10, 83:13-17; D's 56.1 Stmt. ¶ 56.)[4]

Plaintiff does not contend, nor does the record reflect, that the administrative remedies set out in the IGP were unavailable to him with regard to his medical treatment by Defendant. Rather, Plaintiff stated that he is familiar with the grievance process generally, (P's Depo. at 77:13-15), and in fact, he has filed grievances in other contexts several times before and after the incidents that form the basis of his suit here, (*see* ECF No. 56-4 (Plaintiff's grievance status list, reflecting that Plaintiff filed seven separate grievances between October 2016 and June 2017)). His past grievances include a complaint related to his medical care at another facility in October 2016. (*Id.*; P's Depo. at 78:14-79:25.) Accordingly, Plaintiff was aware of the grievance procedures and clearly knew how to grieve prison medical care, as he had done so less than a year prior to the events at issue here.

Plaintiff in his deposition offered two explanations for his failure to grieve his medical care by Defendant, neither of which is sufficient to raise a question of fact regarding the

---

[4] At Plaintiff's deposition, Defense counsel asked, "[Y]ou never filed a grievance against Nurse Furco, but you did file this grievance in March of 2017 about your family not being contacted, correct?" to which Plaintiff responded, "That's correct." (P's Depo. at 83:13-17.)

availability of administrative remedies.  First, Plaintiff stated that he did not grieve his medical

care, in part, because "it would have been pointless . . . because nothing would have came out of

it," adding that he has been told in the past by officers that "grievance is a joke."  (P's Depo at

82:13-19.)  But "[p]risoners are required to exhaust their administrative remedies even if they

believe that administrative remedies would be ineffective or futile."  *Harrison v. Goord*, 07-CV-

1806, 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009) (cleaned up).[5]  Second, Plaintiff stated

that he did not know Defendant's name and did not file a grievance for that reason.  (P's Depo. at

83:3-5.)  This is likewise insufficient to excuse his failure to exhaust the available administrative

remedies because "New York IGP regulations do not require a prisoner's grievance to state the

names of the alleged responsible parties."  *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL

1010001, at *12 (S.D.N.Y. Mar. 18, 2010); *see* 7 N.Y.C.R.R. § 701.5(a)(2) ("In addition to the

grievant's name, department identification number, housing unit, program assignment, etc., the

grievance should contain a concise, specific description of the problem and the action requested

and indicate what actions the grievant has taken to resolve the complaint, i.e., specific

persons/areas contacted and responses received.").

        Accordingly, the Court finds that Defendant is entitled to summary judgment due to

Plaintiff's failure to exhaust his administrative remedies.[6]  As the time for Plaintiff to file a

grievance related to these events has long since passed,[7] his claims are dismissed with prejudice.

---

    [5] The Court will send Plaintiff copies of all unpublished decisions cited in this Opinion
and Order.

    [6] Although I tend to agree with Defendant's alternative argument that Plaintiff failed to
state a claim under the Eighth Amendment, I need not reach that issue because the case must be
dismissed for failure to exhaust.

    [7] These events occurred in February 2017.  The IGP requires that inmates file their initial
grievance within twenty-one days of the incident.  *See* 7 N.Y.C.R.R. § 701.5.  While inmates can

IV.     **CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 53), send

a copy of this Opinion and Order to Plaintiff, and close the case.

**SO ORDERED.**

Dated:  December 21, 2021
        White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.

---

request exceptions to this deadline for mitigating circumstances, no exception is available "if the request is made more than 45 days after the alleged occurrence." *Hilbert v. Fischer*, No. 12-CV-3843, 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 5, 2013) (citing 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)).